United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | CASE NO. 17-cr-00055-YGR-1 |
| Plaintiff, | |
| vs. | **ORDER DENYING MOTION TO DISMISS INDICTMENT** |
| **GONZALO AMBRIZ,** | Re: Dkt. No. 59 |
| Defendant. | |

Defendant has been charged with illegal re-entry into the United States following deportation in violation of 8 U.S.C. § 1326. (*See* Dkt. No. 1 ("Indictment") at ECF 3-4.) The Court considers defendant's second motion to dismiss the indictment pursuant to 8 U.S.C. § 1326(d). Therein, defendant argues that his recent successful petition for a writ of habeas corpus in Contra Costa Superior Court, in which he argued that his guilty plea in that case was constitutionally infirm due to ineffective assistance of counsel, renders invalid the removal order underlying the current indictment. (Dkt. No. 59 ("MTD").)

Having carefully reviewed the indictment and the papers submitted,[1] as well as oral argument from counsel on January 10, 2019, and for the reasons set forth more fully below, the Court **DENIES** defendant's motion to dismiss the indictment.

\\

\\

---

[1] The Court notes that defendant was permitted to file, by no later than January 17, 2019, an additional reply brief in further support of his motion to dismiss the indictment (*See* Dkt. No. 76 ("Minutes")), however he did not so file until January 30, 2019. (*See* Dkt. No. 77, refiled at Dkt. No. 79 ("Suppl. Memo").) The government filed its response one week later, on February 7, 2019. (*See* Dkt. No. 80.) The Court notes that although defendant's filing was untimely, it considered the arguments contained therein, as well as the government's response thereto.

## I. BACKGROUND

Defendant is a citizen of Mexico and was initially admitted into the United States on November 13, 1989 as a lawful permanent resident. (Dkt. No. 13 at 4-5.) On December 6, 2006, an administrative immigration judge ("IJ") ordered him removed based on multiple felony convictions related to trafficking in illicit drugs. (*Id.* at 6.) Specifically, on September 16, 2005, defendant plead guilty and was convicted in Contra Costa County for possession for the purpose of sale of cocaine salt, methamphetamine, and marijuana in violation of three California statutes. (*Id.* at 10-21.) On such bases, the IJ ordered the defendant removed to Mexico. (*Id.* at 6.)

The indictment in the instant action alleges that defendant has since been apprehended and deported back to Mexico several times, including on August 24, 2010, September 1, 2010, July 26, 2011, and November 20, 2014. (Dkt. No. 1 at 3.) On or about August 7, 2016, defendant was again found in the United States, in violation of his removal order. (*Id.*) On February 2, 2017, a federal grand jury returned an indictment charging defendant with the sole count of violating 8 U.S.C. § 1326 for illegal re-entry into the United States. (*Id.*)

The instant motion represents defendant's second attempt to dismiss the indictment pursuant to Section 1326(d). Defendant first moved to dismiss the indictment on May 5, 2017 on the grounds that the 2006 deportation proceedings were invalid because they were based on convictions that should not have qualified as aggravated felonies for the purposes of the Immigration and Nationality Act. (Dkt. No. 10 ("First MTD") at 6-17.) Specifically, defendant averred that the IJ at his 2006 deportation hearing improperly categorized his underlying convictions as aggravated felonies and therefore failed to inform defendant of opportunities for relief from deportation, which are available to similarly situated individuals who have not been convicted of an aggravated felony. (*Id.* at 18-20.) Defendant also argued that the IJ failed to obtain a knowing and voluntary waiver of his right to counsel. (*Id.*) Based thereupon, defendant argued that he had established that the removal proceedings were fundamentally unfair and that his waiver of the right to administrative appeal and judicial review was "not considered or intelligent." (*See id.*)

On July 25, 2017, the Court denied defendant's motion to dismiss, finding that defendant did not establish fundamental unfairness because he "failed to demonstrate any prejudice or violation of his due process rights as a result of the IJ's failure to inform him of his opportunities for relief from removal." (Dkt. No. 23 at 6.) The Court found that the underlying convictions which formed the basis of defendant's removal were properly classified as aggravated felonies for such purposes. (*Id.* at 6.) Moreover, the Court found that "defendant . . . also failed to satisfy the requirement that he exhaust his administrative remedies prior to attacking an order of removal collaterally." (*Id.* at 8.)

On June 22, 2018, defendant filed a petition for a writ of habeas corpus in Contra Costa Superior Court, in which he argued that the guilty plea underlying his September 16, 2005 convictions was constitutionally invalid under *Padilla v. Kentucky*, because his attorney failed to advise him of the immigration consequences of his guilty plea. (*See* Dkt. No. 59-1 ("Habeas Petition") at 10-14 (citing *Padilla*, 599 U.S. 356, 356 (2010)).) In support thereof, defendant submitted his own declaration indicating as follows:

> 3. Prior to changing my plea, I met with Mr. McKenna to discuss the possibility of entering a plea of guilty. At the last meeting, he described an offer from the prosecution that I ultimately decided to accept. Mr. McKenna never advised me that I would be deported as a result of my guilty plea. Mr. McKenna never discussed the concept of an 'aggravated felony' with me; he never informed me that I would be pleading guilty to an aggravated felony. He never advised that I would lose my ability to apply for a chance of avoiding deportation. He never discussed 'cancellation of removal' with me, let alone the fact that I would be forfeiting my ability to even apply for that as a result of my guilty plea. To the contrary, he assured me that I would not lose my permanent resident status (or be dep[o]rted), in large part, because I was to receive a relatively short custodial sentence.[2]
>
> 4. Had Mr. McKenna informed me that the plea-agreement that I was being offered exposed me to a great risk of deportation; I would not have accepted that offer. Had Mr. McKenna informed me that the plea-agreement would render my deportation a virtual certainty, I would not have accepted it. I would have insisted upon a plea-agreement that would not have rendered my deportation an absolute certainty; or, I would have litigated my case if I was unable to receive such an offer.

---

[2] Defendant's wife, Griselda Luna, also submitted a declaration in support of his habeas petition. (*See* Dkt. No. 59-4.) The Court notes that paragraph 3 is virtually identical to Mr. Ambriz's paragraph 3. Paragraph 4 concerns her lack of knowledge that he was being taken into immigration custody following his custodial sentence.

3

(*See* Habeas Petition, Ex. A ("Ambriz Decl.").) The Superior Court judge assigned to the case ordered the prosecution to respond to defendant's petition finding "petitioner has made a prima facie showing that he . . . is entitled to relief."[3] (Dkt. No. 59-2 ("OSC re Habeas").) On September 19, 2018, the District Attorney's Office filed a response indicating: the "People respectfully concede and ask that this court grant petitioner's motion to vacate the convictions and set aside the guilty plea." (*See* Dkt. No. 67, Ex. 4 ("Response to OSC").) As memorialized in a form "Clerk's Docket and Minutes" dated November 2, 2018, the Superior Court "granted" defendant's habeas petition and "set aside" his 2005 guilty plea. (*See* Dkt. No. 59-3, Ex. C ("Habeas Decision").) On November 9, 2018, defendant filed the instant motion. (MTD.)

In opposition to the instant motion, the government submitted the declaration of Thomas F. McKenna, a criminal defense attorney for over 30 years, who declared:

> 2. I do not specifically remember the conversations I had with Gonzalo Ambriz, when I represented him in Contra Costa Superior Court on drug-dealing charges in 2005, in case 5-011918-0. However, I have recently reviewed the following items: the Contra Costa grand jury indictment against Mr. Ambriz; a transcript of Mr. Ambriz's change-of-plea hearing before Judge O'Malley on September 16, 2005; Mr. Ambriz's Advisement of Rights, Waiver and Plea Form signed on September 16, 2005; Mr. Ambriz's judgment dated October 31, 2005; Mr. Ambriz's 2018 habeas corpus petition dated June 22, 20 18, which contained a declaration from Mr. Ambriz and his wife; and the District Attorney's response to the habeas corpus petition.
>
> 3. Nobody from the District Attorney's Office or the Contra Costa Superior Court contacted me for information about case 5-011918-0 during the litigation of the habeas corpus petition in the summer and fall of 2018. Mr. Ambriz's counsel for the federal case, Erick L. Guzman, did not contact me before filing the petition that accused me of ineffective assistance of counsel in case 5-011918-0. In fact, he has never contacted me.
>
> ***
>
> 5. It has always been my practice to carefully go over each and every part of the Advisement of Rights, Waiver and Plea Form with my clients before they enter a guilty or no-contest plea in Superior Court. I always include the part addressing potential immigration or deportation consequences for clients who may be impacted by those consequences.

---

[3] The court did observe that the superior court judge who took defendant's plea properly advised him of the deportation consequences of a plea during the plea colloquy. (*See* OSC re Habeas at 1.)

4

> 6. I am not an expert in immigration law. When I do not know the answer to a question, I never tell my client that I do know the answer. I am confident that I did not assure Mr. Ambriz or his wife that he would not lose his permanent residence status, or be deported, following narcotics convictions.

(Dkt. No. 67, Ex. 3 ("McKenna Decl.").)

## II. LEGAL FRAMEWORK

Under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant may move to dismiss an indictment on the ground that the indictment "fail[s] to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). In considering a motion to dismiss an indictment, a court must accept the allegations in the indictment as true and "analyz[e] whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *Id.* A motion to dismiss an indictment can be determined before trial "if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986), *cert. denied*, 478 U.S. 1007 (1986).

"For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326, the Government must establish that the defendant left the United States under order of exclusion, deportation, or removal, and then illegally reentered." *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (internal citation omitted). A defendant may collaterally attack the removal order under the Due Process Clause because it serves as a predicate element of his illegal re-entry offense under Section 1326. *See United States v. Valdavinos-Torres*, 704 F.3d 679, 686 (9th Cir. 2012). To succeed in such a challenge, a defendant must demonstrate that: "(1) he exhausted any administrative remedies that may have been available to seek relief; (2) the deportation proceedings from which the order issued improperly denied him the opportunity for judicial review; and (3) the order was fundamentally unfair." *Id.* (citing 8 U.S.C. § 1326(d)). "An underlying removal order is 'fundamentally unfair' if [a] a defendant's due process rights were violated by defects in his deportation process, and [b] he suffered prejudice as a result." *Id.* (citing *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1042-43 (9th Cir. 2012) [sub-designations supplied]). The defendant has the burden of demonstrating each element. *See United States v.*

5

*Gonzalez-Villalobos*, 724 F.3d 1125, 1126, 1130 (9th Cir. 2013). Where a defendant uses a claim of ineffective assistance of counsel as a basis to challenge any of the elements, he must show both that: (i) his counsel performed deficiently and (ii) the deficient performance in fact prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

Relevant here, when a conviction is vacated based on a subsequent, and non-retroactive, Supreme Court ruling, that vacation cannot constitute evidence of a due process violation sufficient to attack collaterally a removal order underlying an indictment for illegal reentry. *See Chaidez v. United States*, 568 U.S. 342, 358 (2013) (citing *Padilla*, 599 U.S. at 356) (holding that because *Padilla* announced a new rule, "defendants whose convictions became final prior to *Padilla* . . . cannot benefit from its holding"); *see also United States v. Ponce-Zuniga*, 515 Fed.Appx. 693, 694 (9th Cir. 2013) (finding that although defendant's due process rights were violated by the IJ's failure to obtain a valid waiver of his right to counsel, in light of the Supreme Court's decision in *Chaidez*, the defendant "was not prejudiced by this violation, however, because he did not have a plausible ground for relief at the time of his removal hearing").

### III. ANALYSIS

The central questioned posed by this motion is whether a defendant can satisfy the fundamental unfairness element of his collateral attack where he contends "his due process rights were violated [because] he was deported based on a [c]onstitutionally invalid conviction (specifically, a conviction that was invalid due to the Sixth Amendment violation of ineffective assistance of counsel, to wit, misadvising [defendant] of the immigration consequences of his guilty plea)" and he "was prejudiced as a result of this due process violation as he was deported when he should not have been."[4] (MTD at 9.) The Court first outlines the factual showing made and then the application of law thereon.

---

[4] Petitioner uses the due process arguments to challenge each of the three elements of his Section 1326(d) argument generally. (*See* MTD at 7-10.) However, as the burden is conjunctive, the Court focuses solely on the latter which is dispositive and declines to address the other two elements.

With respect to the claim that petitioner suffered a constitutionally invalid conviction, defendant's offers as proof myriad items. More specifically, he offers his application for writ of habeas corpus to the state superior court, which included his declaration, a transcript of his 2005 guilty plea, and an article from a law school symposium; the order to show cause issued by the superior court; and the minute order of the superior court vacating his conviction after the state filed a statement of concession; as well as a declaration by his wife.[5] (*See* Habeas Petition, OSC re Habeas, Habeas Decision, Dkt. No. 59-4.) Defendant's habeas petition relies on the Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356 (2010), and its progeny, for the proposition that "in light of *Padilla*, trial counsel has a duty to inform defendants of the immigration consequences of a guilty plea, and a failure to do so constitutes ineffective assistance of counsel." (Habeas Petition at 13.)

Notably, defendant's proffer shows that the state court did not conduct an evidentiary hearing nor was any evidence taken or considered from defendant's attorney who represented him in the underlying criminal proceedings in state court. The state court itself did not make any factual findings but merely determined that "petitioner has made a prima facie showing that he . . . is entitled to relief[,]" which the state did not challenge. (*See* OSC re Habeas; Dkt. No. 67, Ex. 4.) Further, the record is devoid of any evidence of actual innocence or a claim of actual innocence. The Court evaluates the proffer de novo and declines to infer from the showing made to the superior court that defendant unequivocally established ineffective assistance of counsel.[6] The Court is not bound by that court's ruling, especially given the lack of a fulsome record.

Defendant first argues that under *Padilla*, the indictment should be dismissed as a matter of law because his underlying conviction "was invalid due to the Sixth Amendment violation of

---

[5] The Court notes that although Mr. Ambriz's wife's declaration bears the caption of the superior court case, it does not appear to have been attached to defendant's habeas petition. (*See* Dkt. No. 59-4; Habeas Petition.)

[6] The state court habeas decision appears wrongly-decided and is not binding upon this Court under *United Sates v. Videal-Mendozai* and *United States v. Moreno-Tapia*. *See Videal-Mendozai,* 705 F.3d 1012 (9th Cir. 2013); *Moreno-Tapia*, 848 F.3d 162 (4th Cir. 2017).

7

ineffective assistance of counsel[.]" (MTD at 9 (citing *Padilla*, 559 U.S. at 356).) As a threshold issue, *Padilla* does not apply retroactively and therefore defendant, whose 2005 conviction predates the Court's 2010 decision in *Padilla*, "cannot benefit from its holding." *Chaidez*, 568 U.S. at 358;[7] s*ee also United States v. Fry*, 322 F.3d 1198, 1200-01 (9th Cir. 2003) *abrogated by Padilla*, 599 U.S. at 356 ("[C]onsistent with our sister circuits, that counsel's failure to advise a defendant of collateral immigration consequences of the criminal process does not violate the Sixth Amendment right to effective assistance of counsel.")

Alternatively, defendant relies on supplemental state authority to argue that his guilty plea was not valid at the time it was entered in 2005 due to California law on ineffective assistance of counsel and therefore the underlying conviction upon which the removal order was based is not valid. (Suppl. Memo at 1-4.) The Court finds defendant's arguments unpersuasive based upon the cited cases, namely *In re Resendiz* and *People v. Soriano*. (*See id.* at 3-4 (citing *Soriano*, 194 Cal.App.3d 1470, 1482 (1987) and *Resendiz*, 25 Cal.4th 230, 240 (2001), *abrogated by Padilla*, 599 U.S. 356 (2010)).)

Thus, in *Resendiz*, the California Supreme Court held "that affirmative misadvice regarding immigration consequences may, depending on the circumstances of the particular case, constitute ineffective assistance of counsel." 25 Cal.4th at 235. Therein, the court reinforced the distinctly individual nature of the analysis. Notably, the *Resendiz* petitioner claimed he was innocent and believed he had a "triable case." *Id.* at 237-38. Further, petitioner claimed that "counsel told him that, if he pled guilty, he would have 'no problems with immigration' except that he would not be able to become a United States citizen." *Id.* at 236. Consequently, petitioner claimed that he was prejudiced because he accepted a plea. *Id.* However, petitioner had signed a plea form advising him of the "consequence of deportation, exclusion from admission to the

---

[7] *See also Ponce-Zuniga*, 515 Fed.Appx. at 694; *Moreno-Tapia*, 848 F.3d at 165, 170-71 (4th Cir. 2017) (holding that because *Padilla* does not apply retroactively per the Court's ruling in *Chaidez*, the defendant's 2007 convictions "were at the time of removal . . . constitutionally valid" and "remain valid today as a matter of federal law," and therefore, the defendant's ineffective assistance of counsel claim could not provide grounds for relief even though the state court vacated the convictions in question).

United States, or denial of naturalization pursuant to the laws of the United States," reviewed these consequences with the trial judge and his prior attorney, who submitted a declaration stating that it was his "'custom and habit' to review plea forms carefully with this clients and to explain to noncitizen clients 'that a guilty plea is likely to effect [sic] the client's ability to become a citizen [and that] the federal government is always wanting to deport non-citizen felons." *Id.* at 238. The record also reflected a stipulation that defense counsel did not independently research or investigate the immigration consequences of his plea or contact an immigration lawyer for advice. *Id.* With this fact pattern as a backdrop, the California Supreme Court declined to "impose[] a blanket obligation on defense counsel, when advising pleading defendants, to investigate immigration consequences or research immigration law." *Id.* at 235, 250.

Ultimately, the California Supreme Court denied the petition finding no prejudice. Even then, in 2001, the court acknowledged that:

> Controlled substance violations are the most damning convictions in the Immigration and Nationality Act. There are very few situations where a plea to a narcotics violation would not have a fatal and permanent immigration consequence as an alien convicted of a crime relating to controlled substances deportable and excludable.

*Id.* at 251-252 (internal quotations omitted). Additionally, the court found that, under California law, a petitioner's assertion that he would not have pled guilty must be "corroborated independently by objective evidence." *Id.* at 253 (citing *In re Alvernaz*, 2 Cal.4th 924, 938 (1992)). Such factors include the accuracy of the offer communicated to the defendant, the advice given, the disparity between the terms of the plea and the probably consequences of proceeding to trial, and evidence that a defendant was amenable to plea negotiations. *Id.* In *Resendiz*, petitioner had faced total punishment of five year and four months and received only 180 days. Thus, the court found that while petitioner could maintain that he would not have pled guilty, "it is equally true that a conviction following trial would have subjected him to the same immigration consequences." *Id.* at 254. Thus, the court concluded that the record did not evidence how petitioner could have avoided conviction and therefore found that he had failed to make an adequate showing of prejudice. *Id.*

*Soriano*, by contrast, demonstrates facts upon where actual prejudice is recognizable. In

that case, the petitioner had become a permanent resident on April 20, 1980. 194 Cal.App.3d at 1474. While in custody, he was served with an order to show cause as to why he should not be deported for having been convicted of a crime of moral turpitude "within five years after entry and . . . sentenced to confinement . . . for a year or more . . . ." *Id.* at 1475. The crime to which he pled guilty occurred on February 3, 1985, less than three months before the expiration of the five-year period. *Id.* Moreover, the judge imposed the *negotiated*-sentence which included confinement for a period of one year. *Id.* at 1473. Again, the petitioner and his former counsel disagreed as to the advice provided, but the court found that the advisement former counsel provided, even according to her own testimony, was "formulaic" and therefore inadequate "to advise a criminal defendant of the possible consequences of his plea[.]" *See id.* at 1479, 1481. Additionally, the petitioner was able to show prejudice by demonstrating that had his sentence been suspended or if he had been sentenced for *one day short of a year*, he would not have been subjected to the same deportation proceedings. *Id.* at 1479-80. Thus, while the court warned against mere "formulaic" advisements, a defendant must still show prejudice, as Mr. Soriano did. *Id.* at 1481-82.

As applied here, the Court finds defendant has not met his burden to establish ineffective assistance of counsel. *Soriano*, 194 Cal.App.3d at 1479 (citing *Strickland* 466 U.S. at 687) (noting that to demonstrate ineffective assistance of counsel a defendant must show "first that his counsel's performance was deficient, and second, that he was prejudiced by that deficiency"). First, the record reveals conflicts regarding defendant's claim that the advice given by prior attorney McKenna was deficient. (*Compare* Ambriz Decl., *with* McKenna Decl.)[8] However, the Court need not resolve that conflict as defendant has failed to demonstrate prejudice.

---

[8] *See Resendiz*, 25 Cal.4th at 253 (finding that the court could not confirm the nature of counsel's warning regarding the immigration consequences of a guilty plea and therefore could not confirm that counsel affirmatively misadvised petitioner); *c.f. Soriano*, 194 Cal.App.3d at 1479 (granting petition for habeas corpus based on ineffective assistance of counsel wherein the court credited counsel's testimony about her advice to petitioner regarding the immigration consequences of a guilty plea and found insufficient the advice as described).

10

Defendant's claims that "had he been advised of [the] dire consequences, he would not have pleaded guilty to the charges he did" and that he was "prejudiced" because he was "deported when he should not have been" are conclusory without showing how he could have avoided deportation, even with proper advice.[9] (MTD at 6, 9.)[10] Thus, defendant's prejudice argument fails for the same reasons as those articulated in *Resendiz*, as he has not shown that "a conviction following trial would [not] have subjected him to the same immigration consequences[,]" "[n]or has he adduced any substantial evidence suggesting the prosecutor might ultimately have agreed to a plea that would have allowed petitioner to avoid adverse immigration consequences." *Resendiz*, 25 Cal.4th at 253-54. Without a showing of prejudice, defendant cannot establish that his underlying conviction was invalid due to ineffective assistance of counsel and therefore has not sustained his burden to show that defects in his deportation process violated his due process rights. Thus, defendant cannot establish that the removal order underlying the instant indictment was fundamentally unfair, as required for a Section 1326(d) collateral challenge. Accordingly, the motion must be denied.

**IV. CONCLUSION**

For the reasons stated above, the Court **DENIES** defendant's motion to dismiss the indictment.

This Order terminates Docket Number 59.

**IT IS SO ORDERED.**

Dated: February 21, 2019

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[9] Defendant's citation to *United States v. Camacho-Lopez* is inapposite in the context of evaluating allegations of ineffective assistance of counsel as it deals with a different kind of challenge, namely one based on the misclassification of an underlying conviction as a crime of violence. (*See* MTD at 9 (citing 450 F.3d 928, 930 (9th Cir. 2006)).) As noted herein, under California law at the time of defendant's 2005 guilty plea, to demonstrate ineffective assistance of counsel a defendant must show both deficiency of performance and prejudice resulting from that deficiency. *Soriano*, 194 Cal.App.3d at 1479 (citing *Strickland* 466 U.S. at 687).

[10] *See also* Ambriz Decl. ("I would have insisted upon a plea-agreement that would not have rendered my deportation an absolute certainty; or, I would have litigated my case if I was unable to receive such an offer.")